UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KELLIE A. REESE,

        Plaintiff,

-vs-                                                        Case No.  5:03-cv-232-Oc-10GRJ

CITY OF CRYSTAL RIVER, FLORIDA,
JAMES FARLEY, individually,

        Defendants.
_____

# **O R D E R**

This case is before the Court for consideration of the Defendant's Motion for Summary Judgment (Doc. 36), to which the Plaintiff has responded (Doc. 45). The motion is ripe for review and the Court concludes that it is due to be granted.

## **PROCEDURAL HISTORY**

This is an action under 42 U.S.C. § 1983 and Florida's Whistle-blower's Act, Fla. Stat. § 112.3187. Kellie A. Reese, a patrol officer for the police department in the City of Crystal River, Florida, asserts her claims against the City of Crystal River and its former Chief of Police, James Farley, in his individual capacity. On September 17, 2003, the Court dismissed the Plaintiff's Florida Whistle-blower's Act claim against Defendant James Farley, in his individual capacity (Doc. 17). The case was held in abeyance and administratively closed (Doc. 19) pursuant to the stipulation of the parties that the facts and issues of the case are the same or almost identical to those of Ballard v. City of Crystal

River, Case No.: 5:02-cv-240-Oc-10GRJ, in which the Court granted summary judgment in favor of the City of Crystal River and Chief Farley. The Court's order abating the action provided that any party could move at any time to reopen the case upon the rendering of the Eleventh Circuit's decision in Plaintiff Ballard's appeal of the summary judgment order. The Eleventh Circuit subsequently affirmed the Court's order in all respects.[1] On February 3, 2005, Plaintiff Reese moved to reopen her case, and the Court granted her motion, but only for the limited purpose of resolving the Plaintiff's claim under Florida's Whistle-blower's Act against the City of Crystal River (Doc. 28).

## BACKGROUND

The Plaintiff became employed as a patrol officer for the Crystal River Police Department in 1997. In June of 2001, the Plaintiff reported to Chief Farley that he had violated the City's nepotism policy by promoting Mike Klyap to Lieutenant, which resulted in Lieutenant Klyap becoming direct supervisor of his wife, Sergeant Kat Klyap. And in October of 2001, after Chief Farley held a mandatory employee meeting where he requested employees of the police department to endorse certain city council candidates, the Plaintiff reported to her supervisor and the state attorney that she believed Chief Farley's conduct at that meeting was improper and illegal. The Plaintiff contends that Chief Farley retaliated against her shortly after she complained about his actions, and he continuously committed retaliatory acts against her until he retired in October of 2003.

---

[1] Ballard v. City of Crystal River, Case No.: 5:02-cv-240-Oc-10GRJ, at Doc. 72 (Ballard v. City of Crystal River, No. 04-10268 (11th Cir. July 20, 2004) (unpublished decision)).

The Plaintiff claims that Chief Farley committed the following retaliatory acts against her during her course of employment: (1) rating the Plaintiff as unsatisfactory on her September 2001 performance evaluation; (2) taking discipline action against the Plaintiff for wearing her training uniform to work on October 13, 2001 rather than her regular work uniform; (3) conducting an internal investigation in early 2002 concerning the truthfulness of the Plaintiff's claim that she wore her training uniform to work because it was the only suitable shirt she had left (the investigation was initiated after the cleaners had delivered two of the Plaintiff's uniform shirts to the police department because the Plaintiff did not retrieve them from the cleaners); (4) terminating the Plaintiff's employment on February 6, 2002 for untruthfulness and for failing to cooperate in an investigation (pursuant to the "Last Chance Agreement" entered into by the Plaintiff and the City, the Plaintiff was reinstated to her position with the police department in March of 2002, and the Plaintiff has continued to be employed with the police department since that time); (5) conducting an internal investigation on the Plaintiff for wearing perfume to work in May of 2002 which was dismissed shortly after the investigation was initiated; (6) requiring the Plaintiff to sign a piece of paper stating that she had read an article entitled "Problem Employees in Smaller Agencies" in December of 2002; (7) noting in the Plaintiff's annual performance evaluation "sick days in conjunction with days off" after the Plaintiff took sick leave in July of 2003; (8) telling the Plaintiff not to speak to Susan Guido, the records clerk for the police department who also filed a retaliation case against the City and Chief Farley, in July of 2003; (9) after the Plaintiff stopped by the police department while she was off duty to give Susan Guido

a birthday present in October of 2003, telling the Plaintiff that she should not be communicating with Susan Guido and if she was found there again she would be reprimanded for loitering; (9) constantly complaining in 2003 about the Plaintiff not having enough tickets or activity; and (10) constantly threatening to institute internal affairs investigations against the Plaintiff and scrutinizing the Plaintiff's work more than other officer's at the police department.

The Defendant argues that summary judgment is due to be granted because (1) the Plaintiff's whistle-blower's claim is untimely, as it was filed outside of the 180-day statute of limitations period; (2) her whistle-blower's claim is barred by the settlement agreement she entered into on March 15, 2002; (3) the Plaintiff cannot litigate her whistle-blower's claim in federal court since she already elected to pursue a remedy through the City's grievance process; and (4) assuming the Plaintiff is able to establish a prima facie case of retaliation, the City has articulated legitimate, non-retaliatory reasons for its actions and the Plaintiff cannot demonstrate that these reasons are mere pretext.

In response, the Plaintiff contends that (1) the Plaintiff's claim is not barred by the statute of limitations since acts of retaliation continued until October of 2003 and the Plaintiff filed her claim in June of 2003; (2) the settlement agreement does not bar the Plaintiff's claim since the terms of the agreement were only in effect for nine months, as specified in the agreement; and (3) the City's reasons for terminating the Plaintiff were mere pretext.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."[2] As the Supreme Court held in Celotex Corp. v. Catrett, the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.[3] If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[4] The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.[5]

---

[2] Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

[3] 477 U.S. 317 (1986).

[4] Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

[5] Celetex, 477 U.S. at 324.

**DISCUSSION**

Florida's Whistle-blower's Act requires a civil action to be brought "within 180 days after the action prohibited by this section."[6] Since the Court concludes that the Defendant did not commit any action prohibited by the Florida Whistle-blower's Act within the 180 days prior to June 23, 2003, the date the Plaintiff filed her whistle-blower's claim, and since the alleged retaliatory acts committed by Chief Farley are discrete acts, rather than a "continuing violation" resulting in "one unlawful employment action," summary judgment with respect to the Plaintiff's whistle-blower's claim is due to be granted because it is untimely.

The Plaintiff contends that she suffered retaliatory acts by Chief Farley from June of 2001 until he retired in October of 2003, therefore the Plaintiff's claim is timely. However, the Plaintiff has not produced sufficient evidence to create a genuine issue of fact that the alleged adverse actions taken against the Plaintiff in the 180-day period prior to the date she filed her whistle-blower's resulted in "a *serious and material* change in the terms, conditions, or privileges of employment."[7] Specifically, making a note in the Plaintiff's

---

[6]   Fla Stat. § 112.3187(8)(b); see also Alloco v. City of Coral Gable, 221 F.Supp.2d 1317, 1366 (S.D. Fla. 2002).

[7]   See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001). Courts apply the same standard used in Title VII retaliation claims when analyzing claims under Florida's Whistle-blower's Act. Sierminski v. Transouth Fin. Cop., 216 F.3d 945, 950 (11th Cir. 2000); Allocco v. City of Coral Gables, 221 F. Supp. 2d 1317, 1367 (S.D. Fla. 2002).

evaluation about her taking sick days in conjunction with her days off,[8] instructing the Plaintiff not to talk with Susan Guido during work hours and threatening the Plaintiff with a reprimand for loitering in the front office,[9] and complaining that the Plaintiff did not produce enough ticket activity[10] did not result in "serious and material" changes to the Plaintiff's employment, therefore she did not suffer any retaliatory acts within the 180-day limitations period which are actionable.

Furthermore, the Court concludes that the alleged retaliatory acts committed by Chief Farley are discrete acts of retaliation, therefore the Plaintiff's argument that the alleged retaliatory acts occurring within the 180-day limitations period renders all of the alleged retaliatory acts committed by Chief Farley as timely is without merit. The Plaintiff cites National Railroad Passenger Corporation v. Morgan[11] in support of her argument that because some of the alleged retaliatory actions taken by Chief Farley occurred within the

---

[8] See Lucas v. W.W. Garinger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001) (holding that negative performance evaluations standing alone do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case of retaliation under the ADA).

[9] See Hansen v. Perry Technologies, 206 F.Supp.2d 1223, 1238 (S.D. Fla. 2002) (holding that employee's allegations that items on his desk were rearranged, he was told to take out some garbage, precluded from working with certain co-worker, subjected to lunch schedule shift and shortened break, and had clipboard and tape gun thrown in his presence were insufficient to show adverse employment action).

[10] See Labady v. Gemini Air Cargo, Inc., 350 F. Supp.2d 1002, 1018 (S.D. Fla. 2004) (holding that employee who was not subjected to pay decreases, ineligibility for promotion, or more formal discipline, but was subjected to criticism for his job performance, did not suffer an adverse employment action).

[11] 536 U.S. 101 (2002).

180-day statute of limitations period, these actions are a part of one single unlawful employment practice making all of the retaliation claims alleged by the Plaintiff timely. In National Railroad, the Supreme Court held

> that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period-180 or 300 days-set forth in 42 U.S.C. § 2000e-5(e)(1). A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.[12]

The Supreme Court also determined that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"[13]  Because each discrete act, such as termination, failure to promote, denial of transfer, and refusal to hire, "starts a new clock" for filing charges, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[14]  "In short, the continuing violations doctrine may not be applied to incorporate untimely claims for discrete discriminatory acts even though they may be related to a timely claim."[15] Accordingly, with respect to the instant case, the Court concludes that the alleged retaliatory acts committed against the Plaintiff were discrete acts, therefore the Plaintiff's retaliation claims occurring

---

[12]  Id. at 122.

[13]  Id. at 114.

[14]  Id. at 113.

[15]  Bauer v. Bd. of Supervisors, 44 Fed. Appx. 194, 198 (9th Cir. 2002).

outside of the 180-day limitations period are not rendered timely by the alleged retaliatory acts occurring within the 180-day limitations period by application of the continuous violation doctrine. [16]

## CONCLUSION

Accordingly, upon due consideration, it is ordered that:

(1) the Defendant's Motion for Summary Judgment (Doc. 36) is GRANTED; and

(2) the Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file in this matter.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 18th day of May, 2006.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record

---

[16]   See, e.g., Dressler v. Daniel, 315 F.3d 75, 79 (1st Cir 2003) (holding that employer's alleged acts of retaliation against former employee who filed sexual harassment claim against the employer were discrete acts); Lewis v. Norfolk Southern Corp., 271 F.Supp.2d 807, 813 (E.D. Va. 2003) (holding that discriminatory job transfer, denials of promotions, denied merit-based pay increase, and negative performance review in retaliation for internal complaint regarding age discrimination were discrete acts of discrimination to which the continuing violation doctrine was inapplicable).